## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ZABRIEL L. EVANS,**

       **Plaintiff,**

**v.**

**JAMES HEIMGARTNER, in his official capacity as Warden of El Dorado Correctional Facility, et al.,**

       **Defendants.**

Case No. 16-3095-DDC-KGS

## MEMORANDUM AND ORDER

This matter comes before the court on defendants' Amended Motion to Dismiss (Doc. 46). The issue is briefed fully and the court is ready to rule. For reasons explained below, the court grants the motion in part and denies it in part.

**I.      Facts**

Because the current dismissal motion relies on Federal Rule of Civil Procedure 12(b)(6) and the court ordered the Kansas Department of Corrections ("KDOC") to file a *Martinez* report, *see* Doc. 8 at 2, the court takes the following facts from the Complaint, the *Martinez* report—to the extent plaintiff does not controvert the facts in it—and plaintiff's response, *Stewart v. Norwood*, No. 16-3189-JAR-DJW, 2017 WL 4284971, at *2 (D. Kan. Sept. 27, 2017).

Plaintiff Zabriel L. Evans was an inmate at El Dorado Correctional Facility in March 2016. On March 1, 2016, plaintiff was in his cell while prison officials were passing out meals. When they passed plaintiff's cell, the small opening in plaintiff's cell door—also known as a food pass—was covered. So, the officials did not give plaintiff a meal. Realizing that the

officials had skipped him, plaintiff uncovered his food pass and requested a meal.  When no one provided it, plaintiff called for medical assistance.  Defendant Robert Wallace—a CSI[1] at El Dorado—responded.  Because CSI Wallace needed to enter plaintiff's cell to respond to the call for medical assistance, he needed plaintiff to submit to handcuffs.  So, CSI Wallace opened the food pass to plaintiff's cell from the outside and plaintiff—still in his cell at this time—stood in front of the food pass, facing away from the door with his hands behind his back.  CSI Wallace then placed a handcuff on plaintiff's left wrist.  After CSI Wallace secured the left wrist, plaintiff turned around and asked to be fed.  The two spoke for about five minutes and then CSI Wallace radioed for assistance to help secure plaintiff.  Defendant Cody Austin—also a CSI—responded.

Once CSI Austin arrived, CSI Wallace told him to spray plaintiff with pepper spray.  So, CSI Austin sprayed plaintiff in the face while CSI Wallace gripped the handcuff attached to plaintiff.  When the spray hit plaintiff, he jerked away but CSI Wallace pulled him back using the handcuff attached to plaintiff's left wrist.  This force caused plaintiff's left wrist to swell.  It then started to bleed.  CSI Wallace eventually uncuffed plaintiff and shut the food pass.  Medical staff assessed plaintiff's injuries at plaintiff's cell door.  But CSIs Wallace and Austin did not allow plaintiff to go to the medical clinic to be evaluated.  During the next five hours, the CSIs refused to allow plaintiff to use the decontamination shower to rinse his body and clothes of the pepper spray.

On March 5, 2016—four days later—plaintiff was preparing to go to the prison medical clinic to have his injured left wrist evaluated.  Before he left his cell, defendants Johnnie Cawthorn and Heather Griffith—both CSIs at El Dorado—came to restrain plaintiff.  CSI Cawthorn opened plaintiff's food pass and cuffed the previously injured left wrist.  As CSI

---

[1]        The record does not specify what "CSI" means.  But it appears that a CSI is some type of prison guard.

Cawthorn prepared to secure plaintiff's right wrist, CSI Griffith started tugging and pulling on the tether that attached the two cuffs. This caused CSI Cawthorn to pull plaintiff's already injured wrist through the food pass, causing plaintiff pain. Plaintiff turned to ask the CSIs to stop pulling the cuffs when CSI Cawthorn suddenly yanked the cuff, causing plaintiff's wrist to become jammed in the food pass and the cuff to tighten around the wrist. As a result, plaintiff's wrist began bleeding and started to swell again. To alleviate the pressure on his wrist, plaintiff reached down with his free hand and tugged back on the cuff. CSI Cawthorn then pulled out his pepper spray and sprayed plaintiff's face. Trying to cooperate with the CSIs, plaintiff put his arms outside of his food pass. In response, CSI Cawthorn bent plaintiff's arm in an awkward direction and screamed, "I'll break it." CSI Cawthorn eventually uncuffed plaintiff and left him in his cell, even though plaintiff's wrist was swollen and bloody. But CSIs Cawthorn and Griffith did allow medical personnel to assess plaintiff at his cell door. Again, they refused to allow plaintiff to use the decontamination shower even though plaintiff's skin was burning from the pepper spray.

In response to both incidents, plaintiff filed a grievance with defendant James Heimgartner—El Dorado's warden. Mr. Heimgartner concluded that KDOC's Use of Force Policy for Prisoners—IMPP 12-111—authorized the CSIs' actions on both occasions. Plaintiff then filed this suit. At some unspecified date before June 28, 2017, plaintiff was transferred to the Hutchinson Correctional Facility.[2] Doc. 17 at 1.

---

[2] While this fact does not appear in the Complaint, the court takes judicial notice of it. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (holding that a court can take judicial notice of facts when considering a motion to dismiss without converting the motion into a summary judgment motion).

3

## II.      Legal Standard

On a motion to dismiss for failure to state a claim, the court accepts, as true, all facts pleaded by the non-moving party.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).  It also draws any reasonable inferences in favor of the non-moving party.  *Id.*  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'"  *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, simply "will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  This is so because the court need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 557 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation omitted)).

When construing a pro se plaintiff's pleadings, the court must hold them "to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to

cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.*

When the plaintiff is a prisoner proceeding pro se, the court may order prison officials to investigate the plaintiff's allegations and file the results of that investigation with the court. *Id.* at 1109. This report of the prison officials' investigation is called a *Martinez* report. *Id.* When ruling on a motion to dismiss, the court can consider any part of the *Martinez* report that plaintiff does not dispute and any policies or justifications for those policies. *Id.* at 1112–13. But the court cannot adopt any fact in the *Martinez* report that conflicts with the Complaint even if the facts in the Complaint are less specific or "well-documented" than those in the report. *Id.* at 1109.

Typically, when the court considers materials outside the pleadings, it must convert a Rule 12 motion into a summary judgment motion. Fed. R. Civ. P. 12(d). This restriction, however, does not apply to uncontested facts in a *Martinez* report. *Hall*, 935 F.2d at 1112. A court also can "'take judicial notice of its own files and records'" without converting a Rule 12(b)(6) motion into a summary judgment motion. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001)).

## III.    Discussion

The Complaint asserts five claims. All five contend that defendants are liable under 42 U.S.C. § 1983 because defendants have violated or are violating plaintiff's Eighth Amendment rights. In the first two claims, plaintiff argues that CSIs Wallace and Austin violated plaintiff's Eighth Amendment rights on March 1, 2016, by using excessive force against him and refusing to allow him to seek medical treatment at El Dorado's medical clinic. Next, his third and fourth

claims assert that CSIs Cawthorn and Griffith deprived plaintiff of his Eighth Amendment rights on March 5, 2016, when they used force against him and refused to allow him to receive medical treatment at the medical clinic.  And last, plaintiff argues that Mr. Heimgartner violated plaintiff's Eighth Amendment rights by enforcing IMPP 12-111—KDOC's Use of Force Policy for Prisoners.

Defendants have moved to dismiss all five claims.  Specifically, CSIs Wallace, Austin, Cawthorn, and Griffith—collectively, "the CSIs"—argue that the Complaint fails to state a claim because qualified immunity protects them from liability for the actions in the Complaint.  Mr. Heimgartner argues that the Complaint states no claim against him because IMPP 12-111 does not violate the constitution.[3]  Naturally, plaintiff disagrees.  He argues that the case must proceed to discovery, arguing that qualified immunity does not protect the CSIs from liability based on the Complaint's allegations and IMPP 12-111 violates the Eighth Amendment.  He also contends that the court already has determined that the Complaint sufficiently states a claim because the Complaint survived the court's screening process for plaintiffs who file *in forma pauperis*.

The court first addresses plaintiff's argument that the court already decided that his Complaint states a claim because it survived the screening process.  Then, the court discusses whether qualified immunity protects the CSIs from this suit's allegations.  And last, the court addresses whether the Complaint fails to state a claim for relief against Mr. Heimgartner.

---

[3]    Mr. Heimgartner also argues that the Complaint fails to state a claim against him in his official capacity for monetary damages because the Eleventh Amendment gives him absolute immunity against any suit seeking monetary damages for past injuries.  Doc. 47 at 4; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and a plaintiff cannot sue a state office for monetary damages under § 1983).  Plaintiff explains in his response that the Complaint asserts no such claim against Mr. Heimgartner.  Doc. 48 at 10–11; *see also* Doc. 1 at 10, 12 (asking solely for injunctive relief against Mr. Heimgartner).  So, the court does not address this defense.

## A.    The Screening Process

Plaintiff argues that the court determined that the Complaint states a claim for relief against all defendants when it concluded that the Complaint should survive the screening process.  When a plaintiff proceeds *in forma pauperis*—meaning that the court allows plaintiff to proceed with his case before paying the full filing fee—the court must dismiss the case if it determines that the Complaint fails to state a claim for relief.  28 U.S.C. § 1915(e)(2)(B)(ii).  The court applies the same standard when reviewing a case under § 1915(e)(2)(B)(ii) as it does when deciding a motion under Fed. R. Civ. P. 12(b)(6).  *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).  This process is commonly called the screening process and a court typically completes this examination before the summonses are served.  *Id.*  But § 1915 does not *require* a court to complete this task before the summonses are issued.  Instead, it instructs courts to "dismiss the case *at any time* if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).

Here, the court did not conduct a § 1915 screening examination.  On May 4, 2016, the court granted plaintiff's motion to proceed *in forma pauperis* in a text entry that did not address the sufficiency of the Complaint.  *See* Doc. 4.  In its Order on March 31, 2017, the court briefly described plaintiff's allegations.  Doc. 8 at 2.  It then explained that "the proper processing of plaintiff's claims cannot be achieved without additional information . . . ."  *Id.*  So, the court ordered defendants to wait to file an answer or motion attacking the Complaint until after KDOC filed a *Martinez* report.  *Id.* at 4.  To say it as simply as possible, the court never addressed the Complaint's sufficiency.  The court thus never has screened the Complaint and this nullifies the need to address this argument.

### B.    Plaintiff's Claims against the CSIs

The court begins its analysis of the Complaint's sufficiency with the claims against the CSIs.  The Complaint alleges that the CSIs violated the Eighth Amendment by using excessive force and manifesting deliberate indifference to plaintiff's medical condition.  Specifically, plaintiff asserts that on March 1, 2016, CSIs Wallace and Austin used excessive force by maliciously using pepper spray and unnecessarily injuring his wrist.  They then exhibited deliberate indifference to his injuries by refusing to permit him to visit the prison's medical clinic to evaluate his injured wrist.  And plaintiff argues that on March 5, 2016, CSIs Cawthorn and Griffith engaged in the same course of conduct.

The CSIs argue that qualified immunity protects them from suit or liability.  Qualified immunity protects government officials from suit when a governmental official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  This analysis has two steps:  first, the court must determine if defendant violated a constitutional right; and second, the court must decide if the law clearly established that right when defendant took the allegedly violative action.  *Id.*  The CSIs argue that the Complaint fails to allege that they deprived plaintiff of a constitutional right and, even if it does, no law in March 2016 clearly established the right of which the Complaint alleges the CSIs took from him.

As explained in the following subsections, the court concludes that qualified immunity does not protect the CSIs from the alleged conduct that forms the basis of plaintiff's claim that the CSIs' use of pepper spray constituted excessive force.  But the Complaint fails to allege sufficiently that the CSIs used excessive force when they tugged on plaintiff's handcuffs.  And the Complaint does not allege sufficiently that the CSIs were deliberately indifferent to

plaintiff's medical needs sufficiently.  The court first explains what makes a right "clearly established."  Then the court addresses the sufficiency of the Complaint's allegations for the excessive force claims.  And last, the court discusses why the Complaint does not allege sufficiently that the CSIs manifested deliberate indifference to plaintiff's injuries.

### 1.  Clearly Established Law

For a statutory or constitutional right to achieve "clearly established" status, the existing precedent must recognize the right as one that is beyond debate for a reasonable governmental official.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The legal authority clearly recognizing the right cannot define it at a "high level of generality."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam).  Instead, the existing precedent must be "particularized to the facts of the case."  *Id.* (internal quotation marks omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))).  Thus, the existing precedent either must involve materially similar facts or establish when the official's conduct obviously violates the law.  *White*, 137 S. Ct. at 552.

Qualifying precedent usually comes from Supreme Court or Tenth Circuit decisions, but it also can come from clearly established case law applied by in other Circuit Courts of Appeals.  *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003).  And the controlling precedent must establish this right on the date when the official took the challenged action.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017).  In short, only "'the plainly incompetent or those who knowingly violate the law'" do not qualify for qualified immunity.  *Id.* at 1867 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

*Mullenix* illustrates how this analysis works.  In that case, police approached a man wanted for arrest.  *Mullenix*, 136 S. Ct. at 306.  When the police informed the man that he was under arrest, the man sped away in a car.  *Id.*  The police followed, and the man led the police on an 18-minute chase, exceeding speeds of 110 miles per hour.  *Id.*  The man called police dispatch twice during the chase, claiming to have a gun and threatening to shoot the police if they continued following him.  *Id.*  The dispatcher informed all responding officers about the man's statements and reported that the man was intoxicated.  *Id.*  Eventually, an officer—the *Mullenix* defendant—shot the man just before he hit spike strips that police had deployed.  *Id.* at 307.  The man died from the wounds.  *Id.*

The fleeing man's heirs sued under § 1983, alleging that the shooting officer had used excessive force.  *Id.*  The officer filed a motion for summary judgment, arguing that qualified immunity protected him.  *Id.*  The district court denied the motion.  *Id.*  The officer appealed that decision, but the Fifth Circuit affirmed the district court.  *Id.*  When determining whether the summary judgment facts established that the officer violated clearly established law, the Fifth Circuit characterized the right asserted by plaintiff as the right to be free from "'deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.'"  *Id.* at 308–09 (quoting Fifth Circuit opinion).  The Fifth Circuit observed that the summary judgment record established that no innocent bystanders were near the man fleeing arrest, his driving was controlled, the officer had not given the spike strips a chance to work, and the officer did not need to make a split-second decision.  *Id.* at 308.  The circuit explained that its prior precedent prohibited the use of lethal force "'absent a sufficiently substantial and immediate threat,'" which was absent.  *Id.* (quoting Fifth Circuit opinion).  So, the Fifth Circuit held that

every reasonable officer would understand that shooting the driver in this particular situation constituted excessive force. *Id.*

The Supreme Court reversed the Fifth Circuit, criticizing it for characterizing the right at a "high level of generality." *Id.* at 309. As it explained, "The general principle that deadly force requires a sufficient threat hardly settles this matter." *Id.* Instead, a court must focus on whether the Constitution "prohibited the officer's conduct in the 'situation she confronted.'" *Id.* (alterations omitted) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). So, the Supreme Court held, the correct formulation of the right asserted in *Mullenix* was a right to be free from deadly force when the officer "confronted a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer . . . ." *Id.* at 309. The Court held that no precedent clearly established such a right. *Id.* at 309–10.

With these principles in mind, the court turns to whether the CSIs' conduct alleged in this Complaint violates a clearly established constitutional right.

### 2. Excessive Force

Plaintiff alleges that the CSIs used excessive force on March 1 and 5, 2016. The Complaint alleges that on March 1, 2016, CSIs Wallace and Austin maliciously sprayed plaintiff with pepper spray and injured plaintiff's left wrist by pulling on his cuffs when plaintiff turned around and asked to be fed. On March 5, 2016, the Complaint alleges, CSIs Cawthorn and Griffith maliciously deployed pepper spray on plaintiff and further injured his left wrist after plaintiff turned around and asked for CSIs Cawthorn and Griffith to stop pulling on the handcuffs.

To prevail on an excessive force claim, plaintiff must allege that the prison officials subjected him to objectively harmful force and that they used that force "'maliciously and sadistically for the very purpose of causing harm.'" *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). On the other hand, prison officials can use force "'in a good faith effort to maintain or restore discipline.'" *Id.* (quoting *Whitley*, 475 U.S. at 320). When deciding whether prison officials used force maliciously or, instead, in good faith to maintain discipline, the courts balance the need for force with the force used. *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996). Officers use force maliciously when no need to discipline the prisoner exists. *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (holding that the summary judgment facts allowed a reasonable jury to conclude that a prison guard deployed pepper spray maliciously when no legitimate reason to discipline a prisoner existed).

Because the use of force on both March 1 and March 5 involved almost identical circumstances (at least as alleged in the Complaint), the court divides its discussion of plaintiff's use of force claim between the two types of force used. The court first discusses whether the CSIs' use of pepper spray on March 1 and March 5 violated a clearly established right under the Eighth Amendment. It then addresses whether the CSIs violated a clearly established right by pulling on his handcuff and injuring his wrist on March 1 and March 5.

### a. Pepper Spray

The CSIs argue that the Complaint fails to allege that they violated plaintiff's clearly established rights when they applied pepper spray his face on March 1, 2016, and March 5, 2016.[4]

---

[4]     Because prison officials use pepper spray to assert their authority, the use of pepper spray implicates the Eighth Amendment. *Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1154 (10th Cir. 2005) (per curiam).

The court begins its analysis by addressing whether the Complaint sufficiently alleges that the CSIs violated plaintiff's constitutional rights. *Norton v. City of Marietta, Oklahoma*, 432 F.3d 1145 (10th Cir. 2005) (per curiam), provides helpful guidance. In *Norton*, prison officials used pepper spray on an inmate—later, the plaintiff in *Norton*. *Id.* at 1152. Plaintiff and a prison guard were arguing about plaintiff's vitamins. *Id.* This disagreement upset plaintiff and he began to kick his door. *Id.* Plaintiff's kicking prompted a few other prisoners to kick their doors, so the prison guard, fearing that a riot might start, ordered plaintiff to stop. *Id.* at 1152–53. Plaintiff obliged, but only after he kicked the door one more time. *Id.* at 1152. There was no further disruption from that prisoner or any other. *Id.*

At some point during this exchange, the prison guard also called for assistance. *Id.* Several other prison guards responded and they entered plaintiff's cell with a backboard—a type of restraining device. *Id.* The prison guards ordered plaintiff onto the backboard. *Id.* at 1153. Plaintiff sat down on the backboard but he refused to lay down. *Id.* The prison guards started to restrain plaintiff on the backboard but he "instinctively" resisted. *Id.* But plaintiff did not become combative. *Id.* While the prison guards were trying to place plaintiff onto the backboard, a prison guard sprayed plaintiff with pepper spray for five to seven seconds. *Id.* After the guard sprayed plaintiff, the other prison guards secured plaintiff to the backboard and splashed some water in his eyes. *Id.* But plaintiff continued to complain for hours about the side effects of the spray without any action from the guards. *Id.*

The prisoner sued, asserting a claim under § 1983 for excessive use of force in violation of the Eighth Amendment. *Id.* at 1148. The prison guards moved for summary judgment, which the district court granted, concluding that a reasonable jury could not conclude from the summary judgment facts that the prison guards had used excessive force. *Id.* at 1149.

13

The Tenth Circuit reversed, finding that the summary judgment record could permit a reasonable jury to conclude that prison officials had used excessive force. *Id.* at 1154. The Circuit reasoned that the summary judgment facts would permit a reasonable jury to find that the prison guards had deployed pepper spray maliciously because plaintiff did not provoke the need for force. *Id.* And plaintiff was in his sixties, so he did not present a physical threat to the twenty and thirty-year-old guards. *Id.* Also, the Tenth Circuit concluded, the summary judgment facts permitted a reasonable jury to conclude that use of pepper spray was objectively harmful because the prison guards sprayed plaintiff for five to seven seconds and plaintiff was forced to suffer for several hours without properly washing the residue off his body. *Id.*

The facts governing the current motion present a similar situation. During the March 1 incident, the Complaint alleges, plaintiff turned around non-combatively while being restrained and asked to be fed. And it also alleges he did so in a non-threatening way. After speaking with plaintiff for five minutes about being fed, CSI Wallace ordered CSI Austin to spray plaintiff. CSI Austin obeyed. Likewise, on March 5, 2016, the Complaint alleges that plaintiff turned around—non-combatively—while being restrained to ask the CSIs to stop tugging on the handcuffs. In response, the CSIs yanked the handcuffs into the top of the food pass. This movement caused plaintiff to reach down and try to relieve the pressure on his wrist. At this point, CSI Cawthorn deployed the pepper spray. During both incidents, plaintiff was inside his cell; the CSIs were outside of his cell.

These allegations, if supported with admissible evidence, could allow a reasonable jury to conclude that CSIs used excessive force. Like *Norton*, the Complaint alleges that plaintiff did not provoke the need for force. Though plaintiff turned around both times while the officers restrained him, he did so in an un-threatening manner. And he was inside his cell while the CSIs

safely were outside his cell.  So, plaintiff presented no physical threat to the CSIs.  The Complaint also alleges that plaintiff did not disobey any orders.  In sum, the Complaint alleges that the CSIs maliciously used force against plaintiff.

Turning to the objective component of the excessive force test, the use of pepper spray—as alleged in the Complaint—was objectively harmful.  The CSIs sprayed plaintiff and then refused to allow him to use the decontamination shower for five hours (after the March 1 incident) and two hours (after the March 5 incident).  Given the factual similarities between *Norton* and this case, the court concludes that the Complaint alleges that the CSIs violated the Eighth Amendment.[5]

This leaves the second half of the qualified immunity analysis.  Tenth Circuit precedent clearly established that the CSIs' use of pepper spray—as alleged in the Complaint—violated the Eighth Amendment.  The court recognizes the Supreme Court's mandate that the right asserted by the Complaint must be particularized to the facts of the current case.  *Mullenix*, 136 S. Ct. at 308.  Here, the right asserted by the Complaint is this:  plaintiff's right to not have pepper spray used against him when plaintiff was not combative or disobedient, was inside his cell while the CSIs deployed the pepper spray from outside, and was denied a decontamination shower for hours following the sprayings.  *Norton*, decided in 2005, establishes that this type of conduct in this particular situation violates the Eighth Amendment.  *See id.* (holding that prison guards violated an inmate's Eighth Amendment rights when they sprayed him with pepper spray despite

---

[5]    While the CSIs never raise this issue, the Complaint merely alleges that CSIs Austin and Cawthorn deployed pepper spray.  And only those who cause a constitutional deprivation can be held liable under § 1983. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998).  Here, the Complaint alleges that CSI Wallace ordered CSI Austin to use pepper spray on plaintiff after CSI Austin had responded to CSI Wallace's call for help.  And the Complaint alleges that CSI Griffith tugged on plaintiff's handcuff, which caused plaintiff to turn around, which lead to CSI Cawthorn spraying plaintiff with pepper spray.  So, the Complaint sufficiently alleges that CSIs Wallace and Griffith deprived plaintiff's constitutional right and thus states a claim for relief against these four CSIs for this use of pepper spray.

the inmate being non-combative, obedient, and not threatening to the guards followed by a refusal to provide a decontamination shower for hours).  The court thus denies defendants' request for qualified immunity at the motion to dismiss stage.

The CSIs argue that qualified immunity protects them because plaintiff was being disruptive and disobedient when they deployed the pepper spray.  On March 1, the CSIs argue, plaintiff tried to pull CSI Wallace's arm through the food pass and was told multiple times to stop pulling on the restraints.  Doc. 47 at 6–7.  And on March 5, the CSIs contend, plaintiff grabbed CSI Cawthorn's arm and gained control of the restraints.  *Id.* at 7.  After both incidents, the CSIs assert, plaintiff refused to use the decontamination shower.  *Id.*  The CSIs argue that no precedent in 2016 made it clear that they violated plaintiff's rights by deploying pepper spray under these circumstances.

But this argument is unfaithful to the facts that control the current motion to dismiss.  To support their arguments, the CSIs cite the *Martinez* report.  *See id.* at 6–7.  But plaintiff explicitly disputes the *Martinez* report's version of what happened on March 1 and 5.  Doc. 48 at 9 ("The amended *Martinez* Report filed by the defendants was totally incomplete . . . .").  This assertion means that the court cannot rely on the factual assertions about this disputed aspect of the *Martinez* report and, instead, must evaluate plaintiff's claim solely on the allegations in the Complaint.  *See Swoboda v. Dubach*, 992 F.2d 286, 290–91 (10th Cir. 1993) (reversing a district court's grant of a Rule 12(b)(6) motion to dismiss when the court accepted the *Martinez* report's version of the facts despite the Complaint alleging facts contradicting the report).  The court thus denies defendants' motion with respect to the Complaint's allegations about use of pepper spray against plaintiff on March 1 and March 5, 2016.[6]

---

[6]      In its discretion, the court can convert a motion to dismiss into a motion for summary judgment if it chooses to rely on materials outside of the pleadings.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d

### b.  Injured Wrists

The Complaint also alleges that the CSIs used excessive force when they injured plaintiff's wrist on March 1, 2016, and March 5, 2016.  On March 1, the Complaint alleges, CSI Wallace gripped the handcuff attached to plaintiff's left wrist after CSI Austin had deployed pepper spray and plaintiff instinctively jerked away.  This caused plaintiff's wrist to become swollen and bloody.  Doc. 1 at 5.  On March 5, the Complaint alleges, CSI Cawthorn forcefully yanked the handcuff attached to plaintiff's already injured left wrist into the top of the food pass, causing his wrist to again become swollen and bloody.  *Id.* at 6.  The CSIs argue that qualified immunity protects them from suit based on this conduct, and so, they contend, the court should dismiss plaintiff's claims based on their pulling of plaintiff's handcuffs.

As with all qualified immunity cases, the court begins by evaluating whether the Complaint adequately alleges that the CSIs used excessive force in violation of the Eighth Amendment.  The Eighth Amendment does not require plaintiff to allege a lasting or horrific injury.  *Hudson v. McMillian*, 503 U.S. 1, 9–11 (1992).  But he must allege more than a minimal injury.  *Id.*  Some courts—including this one—have ruled that minor injuries, such as abrasions from handcuffs and general swelling, are insufficient to state an Eighth Amendment violation.  *See Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (affirming district court's grant of summary judgment against Fourth Amendment excessive force claim because the summary judgment facts established plaintiff merely suffered skin abrasions from handcuffs); *Malik v. Mack*, 15 F. Supp. 2d 1047, 1050 (D. Kan. 1998) (holding that no reasonable jury could conclude

---

1081, 1103 (10th Cir. 2017).  But the court must give the parties a reasonable opportunity to respond and present evidence if it chooses to do so.  Fed. R. Civ. P. 12(d).  Here, the court declines to invoke this option because defendants have not complied with D. Kan. Rule 56.1(f).  It requires defendants to provide notice to a pro se party opposing summary judgment how the summary judgment process operates.  *See Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 475 F. Supp. 2d 1092, 1097 (D. Kan. 2007) (refusing to convert a motion to dismiss into a motion for summary judgment even though defendant relied on materials outside of the Complaint because defendant failed to comply with the local rules governing summary judgment).

that prison officials used excessive force when the only injury alleged was a "wrist injury" and a cut lip); *Fleet v. Tidwell*, No. 14-cv-02632-NYW, 2015 WL 4761190, at *6 (D. Colo. Aug. 13, 2015) (finding that an inmate failed to allege an Eighth Amendment excessive force claim because he only alleged he suffered cuts and bruising from handcuffs).

Here, the Complaint merely alleges that plaintiff sustained a "swollen" wrist and "started bleeding from the cuffs" from the encounter on March 1 and March 5. Doc. 48 at 4–5. The prevailing persuasive authority holds that such injuries are insufficient to state a constitutional violation. Simply put, they are too minimal. The court thus grants the CSIs motion against the claims relying on these injuries.

### 3.    Failure to Allow a Medical Evaluation

The Complaint alleges that the CSIs violated plaintiff's Eighth Amendment rights when they refused to take him to El Dorado's medical clinic to evaluate injuries allegedly caused by the CSIs' use of force. After both the March 1 and March 5 incidents, plaintiff's wrist was allegedly swollen and bleeding. After both incidents, plaintiff asked to be taken to the medical clinic. The CSIs refused, but they did allow medical staff to assess plaintiff at his cell door. The CSIs argue that qualified immunity bars plaintiff's claim for this conduct.

The Eighth Amendment prohibits prison officials from deliberate indifference to a prisoner's serious medical condition. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). A medical condition is serious when a lay person would recognize the need for medical attention easily. *Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1112 (10th Cir. 2016). To plead a sufficient claim for deliberate indifference against a prison official, plaintiff must allege that the prison official knew about the serious medical need but nonetheless disregarded it. *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014).

The Complaint at issue here never alleges that the CSIs chose to ignore plaintiff's obvious medical need.  Indeed, the *Martinez* report asserts that medical personnel evaluated plaintiff at his cell door after both incidents.  Plaintiff never challenges this aspect of that report.  Our Circuit has affirmed a decision dismissing a similar claim.  *See Sanaah v. Howell*, 384 F. App'x 737, 741 (10th Cir. 2010) (holding that Complaint failed to state an Eighth Amendment claim for constitutionally deficient prisoner medical care when it alleged that a nurse cleaned and bandaged a wound).  Given this authority and the absence of this requisite from this Complaint, the court holds that the Complaint fails to allege the CSIs violated a clear constitutional right.  Qualified immunity protects the CSIs against this aspect of plaintiff's claims.

Plaintiff does argue that being evaluated at his cell was insufficient.  Doc. 48 at 14.  He argues that the Eighth Amendment required the CSIs to take him to El Dorado's medical clinic.  *Id.*  But plaintiff cites no case that establishes that a prison official is deliberately indifferent to an inmate's wounded and swollen wrist when the official arranges for the medical staff to evaluate a prisoner in his cell instead of inside the prison's medical clinic.  The court thus concludes that the Complaint fails to state a claim that the CSIs deprived plaintiff of his Eighth Amendment right to receive medical treatment.

### C.    Claim Injunctive Relief

The court now turns to the Complaint's allegations against Mr. Heimgartner, the Warden at El Dorado.  The last claim in the Complaint alleges that IMPP 12-111—KDOC's Use of Force Policy against Prisoners—violates the Eighth Amendment because it allows prison officials to attack non-violent inmates.  Plaintiff asks the court to enter an injunction against Mr. Heimgartner in his official capacity, preventing him from enforcing this policy.  Mr.

Heimgartner argues that the court should dismiss this claim because the policy—even if it allows the conduct that plaintiff alleges in his Complaint—does not violate the Eighth Amendment.

The court has identified another issue with this claim that warrants its dismissal:  the claim is moot.  *See Sause v. Bauer*, 859 F.3d 1270, 1277 n.5 (10th Cir. 2017) (affirming a district court's decision to dismiss a claim under Rule 12(b)(6) for injunctive relief because plaintiff lacked standing despite neither the parties nor the district court raising the issue).  Under Article III of our Constitution, federal courts only have subject matter jurisdiction over live cases or controversies.  *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010).  A case is no longer live when granting the relief requested would have no effect on plaintiff in the real world. *Id.*  In the prisoner litigation context, claims for injunctive relief have no effect when plaintiff sues an official at a particular prison and before the court can take up the injunctive relief claim, the plaintiff is transferred to another prison.  *Id.*

Here, plaintiff no longer is imprisoned at El Dorado Correctional Facility.  He has been transferred to the Hutchinson Correctional Facility.  So, granting injunctive relief against Mr. Heimgartner—the warden of the El Dorado prison—could have no real-world effect on this plaintiff.  While plaintiff's claim for damages might have a real-world effect—namely, it could compensate him for his alleged injuries—plaintiff must demonstrate that each claim he brings is live.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that plaintiff had a live claim for damages by alleging that police used excessive force against him but his claim for injunctive relief was moot).  The court thus dismisses the claim for injunctive relief.

## IV.    Conclusion

For the reasons explained above, the court grants defendants' Amended Motion to Dismiss (Doc. 46) in part and denies it in part.  The court denies the motion with respect to

plaintiff's excessive force claim relying on his injuries from the pepper spray. But the court grants the motion as it applies to the excessive force claim based on his wrist injuries. The court also grants the motion against plaintiff's constitutionally deficient medical care claim and dismisses the injunctive relief claim because this claim is moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Amended Motion to Dismiss (Doc. 46) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 20th day of June, 2018, at Topeka, Kansas.**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**