IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ZABRIEL L. EVANS,

    Plaintiff,

v.

JOHNNIE CAWTHORN, et al.,

    Defendants.

Case No. 16-3095-DDC-ADM

## MEMORANDUM AND ORDER

Pro se plaintiff[1] Zabriel Evans brings this civil rights action under 42 U.S.C. § 1983. He alleges that defendants Johnnie Cawthorn, Cody Austin, Robert Wallace, and Heather Griffith used excessive force and thus violated his rights under the Eighth Amendment to the United States Constitution.

Plaintiff was incarcerated at El Dorado Correctional Facility ("EDCF") in Butler County, Kansas, when the events giving rise to this lawsuit allegedly occurred. Defendants worked as security officers at the facility. Defendants have filed a Motion for Summary Judgment (Doc. 81). Plaintiff has filed a Response (Doc. 88) and defendants have filed a Reply (Doc. 91). Plaintiff also has filed a Motion for Summary Judgment (Doc. 93).[2] Defendants have filed a Response (Doc. 96) to his motion.

---

[1] Because plaintiff proceeds pro se, the court construes his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not assume the role as plaintiff's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court does not construct arguments for plaintiff or search the record. *Id.*

[2] Plaintiff filed his Motion for Summary Judgment on June 28, 2019, almost four months after the court's March 1, 2019 dispositive motion deadline (Doc. 57). Even though plaintiff proceeds pro se, his status as a pro se litigant does not excuse him from complying with the court's rules or facing the

**I.     Procedural Background**

Plaintiff filed his Complaint on May 3, 2016.  Doc. 1.  It alleges § 1983 claims against Johnnie Cawthorn, Cody Austin, Robert Wallace, and Heather Griffith in their individual capacities.  On March 31, 2017, the court ordered the Kansas Department of Corrections ("KDOC") to prepare a *Martinez* report.[3]  Doc. 8.  KDOC filed the *Martinez* report on September 15, 2017 (Doc. 22) and an Amended *Martinez* report on December 14, 2017 (Doc. 45).

Defendants moved for dismissal under Rule 12(b)(6).  Doc. 46.  On June 20, 2018, the court granted defendants' Amended Motion to Dismiss in part and denied it in part.  Doc. 52.  The court granted defendants' motion on the excessive force claim based on plaintiff's alleged wrist injuries.  And the court granted the defendants' motion on plaintiff's constitutionally deficient medical care claim.  Also, the court dismissed plaintiff's injunctive relief claim as moot.[4]  But the court denied defendants' motion as it applied to plaintiff's excessive force claim relying on his injuries allegedly arising from defendants' use of pepper spray.  This excessive force claim is thus the only remaining claim in the case.

---

consequences of noncompliance.  *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).  Nevertheless, the court considers and decides plaintiff's untimely motion.

[3]     When a pro se plaintiff is a prisoner, the court may order prison officials to investigate the plaintiff's claims and prepare a report (called a *Martinez* report) to serve as a record "sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

[4]     Plaintiff asked for injunctive relief against EDCF Warden James Heimgartner to prevent him from enforcing KDOC's Use of Force Policy against Prisoners.  Doc. 1 at 10.  Earlier, the court dismissed the claim as moot because KDOC transferred plaintiff to Hutchinson Correctional Facility, so this claim no longer presented a live controversy.  Doc. 52 at 20.  This ruling led the court to dismiss Mr. Heimgartner from the suit.  *Id.*

On March 1, 2019, defendants filed a Motion for Summary Judgment. Doc. 81. In accordance with D. Kan. Rule 56.1(f), defendants sent plaintiff a "Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion." Doc. 83. This notice advised plaintiff that he "may not oppose summary judgment simply by relying upon the allegations in [his] complaint. Rather, [he] must submit evidence, such as witness statements or documents, countering the facts asserted by the defendants and raising specific facts that support [his] claim." *Id.* at 1. Also, consistent with our local rules, defendants attached to their Notice the full texts of the rules governing summary judgment: Fed. R. Civ. P. 56 and D. Kan. Rule 56.1. *Id.* at 3–5. Plaintiff filed a Response (Doc. 88) with 11 exhibits supporting his claim (Doc. 88-1). Defendants filed a Reply (Doc. 91). Plaintiff then filed his own Motion for Summary Judgment (Doc. 93).[5] Defendants filed a Response (Doc. 96).

**II.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if

---

[5]     Plaintiff's Memorandum in Support of his Motion for Summary Judgment (Doc. 94) cites various exhibits, but he attached no exhibits to his filing. It appears that plaintiff meant to reference exhibits he had submitted with his Response (Doc. 88) to defendants' summary judgment motion. The court thus assumes that the exhibits cited in plaintiff's Memorandum in Support of his Motion for Summary Judgment (Doc. 94) refer to exhibits in plaintiff's earlier response to defendants' motion (Doc. 88). And thus, the court considers those exhibits when deciding both summary judgment motions.

3

under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

The court applies this same standard when parties file cross-motions for summary judgment. Each movant bears the burden of establishing that, for purposes of its motion, no genuine issue of material fact exists and it is entitled, as a matter of law, to the judgment sought by its motion. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross-motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). But where cross-motions overlap, the court may address the legal arguments

together. *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.   Motions for Summary Judgment

#### A.  Uncontroverted Facts

Plaintiff has been an inmate in KDOC custody since July 12, 2005. Doc. 82-2 at 1. In March 2016—the time of the incidents at issue here—KDOC housed plaintiff as its prison near El Dorado, Kansas. *Id.* at 2. Since July 2014, KDOC has issued disciplinary reports to plainitff for battery (12 times), interfering with restraints (five times), and disobeying orders (29 times). *Id.* at 3–8. The following facts come from the summary judgment record—including the Complaint, the *Martinez* report,[6] and properly submitted affidavits and exhibits—and are either uncontroverted or construed in the light most favorable to plaintiff.[7]

##### 1.  March 1, 2016 Incident

On March 1, 2016, Officer Robert Wallace didn't provide plaintiff his dinner tray because plaintiff had covered his cell window for privacy. Doc. 88-1 at 13 (¶ 2). When plaintiff realized that Officer Wallace had skipped his cell, he called him to his cell door and asked for his

---

[6]   On summary judgment, a *Martinez* report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). But "absent valid challenge," the *Martinez* report "may be treated as providing uncontroverted facts." *Hartz v. Sale*, 687 F. App'x 783, 785 (10th Cir. 2017).

[7]   Whether plaintiff's claim survives summary judgment depends on whether defendants have qualified immunity. The court thus views the facts in the light most favorable to the plaintiff because "[i]n resolving questions of qualified immunity, courts are required to view the facts in the light most favorable to the party asserting the injury . . . ." *Scott v. Harris*, 550 U.S. 372, 377 (2007).

meal. *Id.* at (¶ 3). Officer Wallace refused to give plaintiff his meal, and wouldn't call the captain/shift supervisor as plaintiff asked. *Id.* at (¶¶ 3, 4). Plaintiff then signaled a medical emergency so that he could speak to a captain. Doc. 88 at 4; Doc. 88-1 (¶ 5).

Since plaintiff had signaled a medical emergency, officers began placing him in restraints to perform a medical assessment. Doc. 82-4 at 1 (¶ 3); Doc. 82-5 at 1 (¶ 5). Officer Wallace applied one of the restraints to plaintiff's left wrist. Doc. 82-4 at 1 (¶ 3). Plaintiff then turned toward his cell door to try to talk to Officer Wallace about his meal tray, but "there were no threats made nor were there any attempts of violence or resistance towards Officer Wallace."[8] Doc. 88-1 at 14 (¶ 6–7). Plaintiff's only request was that he receive his meal tray.[9] Doc. 88-1 (¶ 7).

Officer Wallace called over the radio for Officer Cody Austin, who responded to plaintiff's cell. Doc. 88-1 (¶ 8); Doc. 82-6 (¶ 3). Officer Wallace instructed Officer Austin to

---

[8] As explained above, the court views the facts in the light most favorable to the plaintiff. Plaintiff disputed some aspects of defendants' statement of material facts. Where properly disputed, the court has accepted plaintiff's version of the facts. On occasion, plaintiff did not submit pertinent facts. And in those circumstances, the court adopted defendants' facts to provide context for other facts supplied by plaintiff. For example, defendants assert (by affidavit and with information from the *Martinez* report) the following version of events: Plaintiff turned toward Officer Wallace and tried to gain control of the restraints while Officer Wallace was handcuffing him. Doc. 82-4 at 1 (¶ 3); Doc. 82-5 at 1 (¶ 5); Doc. 22 at 2 (¶ 3). Officer Austin and Mr. Pickett (an EDCF nurse) saw plaintiff and believed plaintiff was resisting Officer Wallace. Doc. 82-6 (¶ 3); Doc. 82-5 (¶ 5). Plaintiff refused to allow Officer Wallace to apply the second restraint or remove the restraint from his left hand. Doc. 82-6 (¶ 3). He pulled on the restraints, injuring Officer Wallace's wrist and hand. Doc. 82-4 (¶ 4); Doc. 82-6 (¶ 3); Doc. 82-5 (¶ 6); Doc. 78-1 at 17. Officer Austin saw that plaintiff then tried to remove the restraints from the tether. Doc. 82-6 (¶ 4). Officer Austin ordered plaintiff to stop, but he refused. Doc. 82-6 (¶ 4); Doc. 82-4 (¶ 3). So, Officer Austin sprayed plaintiff's face with a three-second burst of pepper spray to "gain compliance." Doc. 82-6 (¶ 4); Doc. 82-4 (¶ 3); Doc. 82-7 (¶ 3). After Officer Austin sprayed plaintiff, he stopped trying to remove the restraints from the tether. Doc. 82-6 (¶ 4); Doc. 82-7 (¶ 3). Officer Austin sprayed plaintiff just once. Doc. 82-7 (¶ 3). After the incident, Officer Wallace went to the emergency room for lacerations and a sprained left wrist. Doc. 82-4 (¶¶ 4–5); Doc. 78-1 at 17.

[9] Plaintiff's assertions in his affidavit conflict with his earlier "Appeal of Grievance" form (included the *Martinez* report) that he "refused to give up the cuffs until they brought me food." (Doc. 45-5 at 13). But for summary judgment purposes, the court accepts plaintiff's assertion in his affidavit that he was not threatening or violent toward Officer Wallace.

"[s]pray him!" while Officer Wallace held plaintiff in front of his cell door. Doc. 88-1 (¶ 9). Officer Austin first sprayed plaintiff through the food pass, and then reached his arm into the cell and "sprayed [plaintiff] in the face and upper body several times . . . without warning or attempt at resolution." Doc. 88-1 (¶ 9).

Plaintiff's affidavit asserts that Officers Austin and Wallace refused to give him a shower and would not "cut the water on" in his cell.[10] Doc. 88-1 at 14 (¶ 10). Plaintiff's affidavit also asserts he never refused a medical assessment. Doc. 88-1 (¶ 12). And plaintiff's affidavit asserts officers refused him a change of clothing.[11] *Id.* (¶ 11).

## 2. March 5, 2016 Incident

On March 5, 2016, plaintiff made another call for a medical assessment. Doc. 82-9 (¶ 3); Doc. 82-10 (¶ 3). Officers Cawthorn and Griffith responded. *Id.* Officer Cawthorn applied one of the restraints to plaintiff's left wrist. Doc. 82-9 (¶ 5). Plaintiff then turned around "to see what the issue was" because Officer Griffith was tugging at the tether attached to the restraints. Doc. 88-1 (¶¶ 15–17). Plaintiff's wrist was stuck at the top of the food pass, so plaintiff used his "free hand to pull and get [his] wrist free from the top of the food pass so that [he] could stop the pain and also show [his] compliance by sticking [his] whole arm out of [the] food pass."[12] Doc. 88-1 at 15 (¶ 18). Plaintiff pulled on the restraints "to release some of the pressure of them

---

[10] According to defendants, plaintiff refused medical treatment after the incident. Doc. 22 at 2; Doc. 82-6 (¶ 7); Doc. 82-5 (¶ 9).

[11] Officer Austin asserts that plaintiff "refused decontamination and medical attention," and that because plaintiff refused decontamination, Officer Austin gave plaintiff "instructions on how to properly decontaminate and advised that he could have the water turned on in his in-cell shower to decontaminate." Doc. 82-6 at 2 (¶ 7). Mr. Pickett asserts that plaintiff "had access to a shower in his cell which could have been turned on at his request." Doc. 82-5 at 2 (¶ 12). Plaintiff "also had access to a sink and toilet which would have had running water at all times [plaintiff] remained in his cell." *Id.*

[12] Defendants assert by affidavit that plaintiff grabbed Officer Cawthorn's arm and tried to gain control of the restraints. Doc. 22 at 2–3; Doc. 82-9 (¶ 5); Doc. 82-11 at 2.

7

pulling" and "had no choice but to take [his] other hand and grab on to the cuffs while COI Heather Griffith was still pulling on the tether and CSI Johnnie Cawthorn placed one foot on the outside door for leverage and while continuing to pull . . . ." Doc. 1-1 at 8; Doc. 32 at 7 (¶ 17).

Plaintiff bent down toward the food pass to free his arm, but "never . . . bec[a]me threatening or combative nor . . . attempt[ed] any acts of violence . . . ."[13] Doc. 88-1 at 17 (¶ 22). Plaintiff didn't remove his hand from the food pass because he was trying to "show [his] compliance by sticking [his] whole arm out of [the] food pass."[14] Doc. 88-1 at 16 (¶ 18).

Plaintiff asserts that Officer Cawthorn then sprayed him with pepper spray three times: first in plaintiff's face, second in his chest and neck when he tried to "get out of the line of fire," and third, "all over [his] cell" after he moved to the side of the cell door. Doc. 88-1 at 16 (¶ 19).[15] Plaintiff released the restraints and officers did not spray him again. Doc. 82-9 (¶ 6).

Plaintiff did not take a decontamination shower after officers had sprayed him with the pepper spray. Plaintiff asserts by affidavit that Officers Cawthorn and Griffith "refused [to

---

[13] Plaintiff, responding to Officer Cawthorn's affidavit, asserted by affidavit that he never threatened Officer Cawthorn. Officer Cawthorn's affidavit testified that he believed plaintiff was trying to bite his arm when he bent down toward the food pass. Doc. 82-9 (¶ 6).

[14] Defendants assert that Officer Griffith ordered plaintiff to remove his hand from the food pass several times. Doc. 82-10 (¶ 6). Plaintiff's affidavit doesn't directly controvert this assertion, but plaintiff insists that he stuck his arm out of the food pass to show the officers that he was "not resisting and that [he] was in full compliance." Doc. 88-1 at 16–17 (¶ 21).

[15] Plaintiff's Amended Motion to Dismiss is inconsistent with plaintiff's affidavit. The Amended Motion to Dismiss says that Officer Cawthorn sprayed plaintiff in the face through the food pass. Doc. 48 at 5 (¶ 13). Plaintiff does not reference a second and third spray. Similarly, plaintiff's "Inmate Grievance Form" in the *Martinez* report asserts that, "officers held me at the door by the tether and cuffs while spraying me in the face with chemical agent . . . ." Doc. 78-3 (¶ 1). Officer Cawthorn's affidavit states that he sprayed plaintiff with a one-second burst of pepper spray that hit his shirt. Doc. 82-9 (¶ 6). Still, the court views the evidence in the light most favorable to plaintiff and assumes that Officer Cawthorn used pepper spray on plaintiff three times during the March 5 incident, as plaintiff asserts on summary judgment.

8

provide him with] a decontamination shower" and that they denied him medical help and a shower.[16]  (Doc. 88-2 ¶¶ 23, 27).

   B. Analysis

      1. Qualified Immunity

Defendants argue they are entitled to summary judgment based on qualified immunity. Specifically, defendants argue, "[p]laintiff's allegations fail to establish that deploying a short burst of pepper spray to an inmate [who] is refusing to comply with direct commands, trying to gain control of restraints, and is attempting to injure correctional officers was a constitutional violation." Doc. 82 at 10.  Defendants argue plaintiff "also cannot establish that these rights were clearly established at the time of the conduct." *Id.*  Plaintiff argues defendants are not entitled to summary judgment because when plaintiff "faced the door officers immediately began snatching and yanking the cuffs and tether and began spraying [plaintiff] several times through the food pass of his cell door with O.C. chemical agent for no other reason than to cause injury and harm." Doc. 88 at 29.  He argues that "the force in both incidents [was] unnecessary and done maliciously in bad-faith only to cause injury and not to restore discipline." Doc. 88 at 30.

Plaintiff also moves for summary judgment.  Plaintiff argues he is entitled to summary judgment because defendants "have not disputed, controverted, or denied the facts of: 1) [d]enying plaintiff a meal tray; 2) [r]efusing plaintiff a resolution in the incident; 3) holding plaintiff at the cell door; 4) [a]ttacking plaintiff through his food pass with OC chemical agent; 5) [l]eaving plaintiff in his cell with chemical agent on him and refusing plaintiff a decontamination shower; and 6) [r]efusing to [c]ooperate in discovery in [p]roducing material [f]act documents in

---

[16]  According to defendants, plaintiff refused a decontamination shower. Doc. 82-9 (¶ 8).  And they say the nurse talked to plaintiff through the door of his cell, but plaintiff "only requested mental health at this time." Doc. 82-11 at 3.

9

violation of Fed. R. Civ. P[.] 37." Doc. 94 at 2. Defendants again assert a qualified immunity defense. Doc. 96 at 28. They argue plaintiff hasn't shown that the March 1, 2016 and March 5, 2016 pepper spray incidents were constitutional violations. Rather, "the clearly established law was to the contrary." *Id.* The outcome of both summary judgment motions thus depends on whether defendants have qualified immunity to plaintiff's claims based on these incidents.

"[Q]ualified immunity is an affirmative defense to a section 1983 action . . . ." *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

To establish a § 1983 claim against an individual defendant asserting a qualified immunity defense, plaintiff must show facts that "make out a violation of a constitutional right," and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. But the court must grant qualified immunity unless the plaintiff shoulders his "heavy burden" to make both parts of this showing. *Stevenson v. Cordova*, 733 F. App'x 939, 942 (10th Cir. 2018).

The only claim remaining in this case is plaintiff's excessive force claim based on two pepper spray incidents. Plaintiff thus bears the burden of establishing that he had a clearly established right to be free from prison guards spraying him with pepper spray when he turned toward his cell door (on March 1) and when he bent down and stuck his arm out the food pass (on March 5) while officers were handcuffing him for a medical assessment. Plaintiff alleges prison guards used excessive force during these incidents, thus violating his Eighth Amendment rights.

An Eighth Amendment excessive force claim has two parts: (1) an objective part that asks "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and (2) a subjective part where the plaintiff must show that prison officials acted with a "sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). "The core inquiry for an Eighth Amendment excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (citation omitted).

### a. Does the summary judgment evidence present a genuine issue of a constitutional violation?

Defendants argue that, as a matter of law, the force used against plaintiff on March 1, 2016 and March 5, 2016, didn't rise to the level necessary to support an actionable claim for a constitutional violation. The court agrees. In *Lane v. Carty*, No. 09-3153-SAC, 2009 WL 3125469 at *1 (D. Kan. Sept. 28, 2009), an inmate twice refused an officer's order to remove his hand from a food pass. The officer sprayed plaintiff with pepper spray through the food pass, beat on his hand with the bottom of the can, and grabbed plaintiff's arms to try to pull him through the food pass. *Id.* The court concluded that plaintiff had failed to state a claim for

excessive force because plaintiff disobeyed two direct orders to remove his hand from the food pass, and his actions "were clearly contrary to the legitimate penological interest of maintaining control and discipline in the prison facility." *Id.* at *3. The court concluded that,

> [p]laintiff's opinion that the force was excessive, without more, does not establish that defendant acted maliciously and sadistically to cause harm . . . [a]llegations of the guard's striking his hand with a can or a security device, and forcefully struggling with his hands and arms through the pass to force his compliance do not . . . rise to the level of cruel and unusual punishment.

*Id.* At most, plaintiff alleged facts showing "an isolated battery." *Id.*

Here, the summary judgment facts establish that plaintiff initiated both the March 1 and March 5 incidents by signaling a false medical emergency. Plaintiff admits that during the March 1 incident, he turned around while Officer Wallace was handcuffing him and tried to talk to him about his meal tray. Plaintiff asserts that even though he turned around while Officer Wallace was handcuffing him, "no threats were made nor were there any attempts at violence or resistance towards Officer Wallace". Doc. 88-1 (¶ 7). In the March 5 incident, plaintiff concedes, he turned around in his cell "to see what the issue was" because officers were tugging on the handcuffs. He used his free hand to pull on the restraints and free his wrist from the top of the food pass, but again asserts that he "never . . . bec[a]me threatening or combative nor . . . attempt[ed] any acts of violence." Doc. 88-1 at 17 (¶ 22).

These assertions in plaintiff's affidavit that he wasn't threatening, violent, or combative "are entitled to no weight on summary judgment, because they are conclusory, without providing any factual basis for the conclusions." *Lunow v. City of Oklahoma City*, 61 F. App'x 598, 607 (10th Cir. 2003); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (plaintiff's claim did not survive summary judgment because conclusory allegations were not supported by the record). Even accepting as true plaintiff's conclusory statement that he was not

12

combative or attempting violence or resistance, the outcome does not change. Turning around in his cell while officers were handcuffing him for a medical assessment he had requested is a form of resistance. Turning around in his cell, pulling on the restraints with his free hand, and sticking his arm out of the food pass while officers were trying to handcuff him—even if he was trying to show compliance—also is a form of resistance. Thus, even accepting as true all of plaintiff's conclusory assertions that he wasn't attempting violence or resistance, plaintiff hasn't identified a genuine dispute of material fact sufficient to establish a constitutional violation. As in *Lane*, officers use of pepper spray on a resisting inmate "does not rise to the level of cruel and unusual punishment." *Lane*, 2009 WL 3125469 at *3.

Similarly, in *Grissom v. Roberts*, No. 09-3128-SAC, 2009 WL 2601260, at *6 (D. Kan. Aug. 24, 2009), the court ruled that the plaintiff had failed to state a claim for excessive force when officers used pepper spray on him because he "had a history of battering or attempting to batter correctional officers, refused to be restrained, and had thrown a cup of water on [defendant]." Plaintiff's actions were "clearly contrary to the legitimate penological interest of maintaining control and discipline in the prison facility," and "[u]nder such circumstances, the use of some physical force such as pepper spray can hardly be considered repugnant to the conscience of mankind." *Id.*

Plaintiff argues that *Grissom* differs from the summary judgment facts here because he "was requesting a meal tray that he was entitled to and officers were refusing to feed him, and there was no violence or threats of violence from [plaintiff] whatsoever." Doc. 88 at 28. But plaintiff never acknowledges that the uncontroverted summary judgment facts establish that he resisted restraint applied for the medical assessment he had requested, which is "contrary to the legitimate penological interest of maintaining control and discipline in the prison facility."

13

*Grissom*, 2009 WL 2601260, at *6. Plaintiff's conclusory statement that he was not violent is not dispositive to the court's analysis.

*DeSpain v. Uphoff*, 264 F.3d 965 (10th Cir. 2001), is the only case the court has identified where the Tenth Circuit has found that an officer did not have qualified immunity when using pepper spray on an inmate. In that case, the Tenth Circuit held that an officer's indiscriminate spraying of pepper spray at inmates as a "practical joke" defeated the officer's qualified immunity because the act "was not warranted at all." *Id.* at 978. And, "[w]here no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . . the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999)).

Here, the summary judgment facts cannot support an inference that officers acted maliciously and sadistically to cause plaintiff harm. Instead, the uncontroverted facts establish that officers sprayed plaintiff with pepper spray through his cell door after he turned around to face the front of his cell (on March 1) and when he turned around, pulled on the restraints, and stuck his arm out of the food pass (on March 5). Both times, officers had a "legitimate penological purpose" for using pepper spray because they were trying to restrain plaintiff for a medical assessment after he signaled a medical emergency. Plaintiff hasn't established that the officers' actions rose to the level of a "practical joke" or that their actions were "not warranted at all" because the uncontroverted facts establish he resisted handcuffing by turning around in his cell, pulling on the restraints, and sticking his hand out of the food pass. Even viewing the facts in the light most favorable to plaintiff, plaintiff has not presented evidence sufficient to support a triable issue whether officers committed a constitutional violation.

14

### b. Does the summary judgment evidence present a triable issue of a clearly established right?

Even if the court assumes a constitutional violation occurred, defendants still deserve qualified immunity because no precedent clearly establishes plaintiff's right not to have pepper spray used against him under these circumstances. "To qualify as clearly established, a constitutional right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "And although there need not be a case precisely on point for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* "This high bar ensures qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* If the law was not clearly established when the incident occurred, the court should grant summary judgment for the defendant. *See Stevenson*, 733 F. App'x at 945 (affirming the district court's grant of summary judgment for defendants because there was no Supreme Court, Tenth Circuit, or other circuit court case "sufficiently on point" to place the constitutional question beyond debate).

Here, plaintiff hasn't cited any precedent placing the constitutional question beyond debate. Plaintiff generally argues he is entitled to summary judgment under § 1983. Doc. 94 at 9. He asserts that § 1983 has "unique importance, for enforcement is placed in the hands of the people" and that it "represents a balancing feature in our government structure whereby 'individual citizens are encouraged to police those who are charged with policing us all.'" *Id.* at 9–10. Plaintiff cites *Whitley v. Albers*, 475 U.S. 312 (1986), arguing that defendants "never established any good faith effort [for] the force used on March 1 and March 5, 2016." *Id.* at 11. But plaintiff misunderstands the burden in a qualified immunity case. Plaintiff must "make out a

violation of a constitutional right" and show that "the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Plaintiff identifies no case from the Supreme Court, the Tenth Circuit, or any other Circuit Court recognizing a clearly established right to be free from pepper spray while he is resisting officers.

*DeSpain*, 264 F.3d at 978, is the only case the court has located that clearly establishes a constitutional protection from pepper spray "where no legitimate penological purpose can be inferred from a prison employee's alleged conduct." But here, the uncontroverted facts preclude its application. They establish that plaintiff signaled false medical emergencies on March 1 and March 5, 2016. On March 1, plaintiff turned toward Officer Wallace to try to talk to him about his meal tray. Plaintiff's conclusory assertion, without factual basis, that he "never made any attempts at violence or resistance" can't controvert the fact that he turned around in his cell while officers were handcuffing him. Likewise, on March 5, plaintiff admits he turned around to face Officer Cawthorn while Officer Cawthorn was restraining him. Plaintiff concedes he pulled on the restraints to free his wrist from the food pass, and that he stuck his arm out of the food pass. Similar to the March 1 incident, plaintiff's conclusory assertion that he "never . . . bec[a]me threatening or combative nor . . . attempt[ed] any acts of violence . . . ." doesn't controvert the facts that he turned around in his cell, pulled on the restraints, and stuck his arm out of the food pass.

In both incidents, the uncontroverted facts establish that plaintiff resisted officers before they used pepper spray on him. The officers thus had a "legitimate penological purpose" for their actions. *DeSpain*, 264 F.3d at 978. And plaintiff's opinion that "the force was excessive, without more, does not establish that defendant acted maliciously and sadistically to cause harm .

. . ." *Lane*, 2009 WL 3125469, at *3; *see also Stevenson*, 733 F. App'x at 941 ("Plaintiff must show more than a mere 'dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). In sum, *DeSpain* is not "sufficiently on point" to the uncontroverted facts here to establish that plaintiff had a clearly established constitutional right that was violated.

Plaintiff thus fails to overcome defendants' qualified immunity defense because he didn't make out a violation of a clearly established constitutional right. Consequently, defendants are entitled to qualified immunity as a matter of law.

### 2. Plaintiff's Discovery-Based Argument

Plaintiff argues he is entitled to summary judgment because defendants failed to produce documents plaintiff sought in discovery. Doc. 94 at 7. But plaintiff's arguments are untimely and procedurally improper. Plaintiff filed two motions to compel discovery (Docs. 67 & 74). The court denied both motions without prejudice for failing to comply with Fed. R. Civ. P. 37(a)(1). Doc. 71 and 77; *see also* D. Kan. Rule 37.2. The court explained to plaintiff how to comply with Fed. R. Civ. P. 37(a)(1). *Id.* But plaintiff never filed a renewed motion to compel that complied with the rule, and he never asked for an extension of time to file such a motion. Instead, he waited to raise his discovery objections until he filed his Motion for Summary Judgment (Doc. 93) on June 28, 2019—more than four months after the court had denied his motion to compel without prejudice.

Under D. Kan. Rule 37.1(b), a motion to compel discovery "must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing . . . . [o]therwise, the objection to the default, response, answer, or objection is waived." Plaintiff waited until he filed his Motion for

Summary Judgment to raise his objections, long after the deadline established in D. Kan. Rule 37.1(b) had passed. Plaintiff thus has waived any discovery objection because of untimeliness and improper procedure. The court denies plaintiff's Motion for Summary Judgment on this ground.

### 3. Plaintiff's Security Interest

Finally, plaintiff claims he is a "Holder in Due Course and has Security Interest in this named case." Doc. 94 at 12. Plaintiff provides several definitions ("security agreement," "person," and "property") from 28 U.S.C. § 3002, which is from Chapter 176 (Federal Debt Collection Procedure) of the United States Code. As best the court can discern, plaintiff is asking for $20,000 in compensatory damages and $5,000 in punitive damages. Since the court denies plaintiff's Motion for Summary Judgment, the court also denies plaintiff's request for damages.

## IV. Conclusion

For all these reasons, the summary judgment facts viewed in plaintiff's favor present no triable issue on plaintiff's claim for an Eighth Amendment excessive force violation. The court thus grants defendants' Motion for Summary Judgment against plaintiff's Eight Amendment claim. The summary judgment facts—when viewed in plaintiff's favor—fail to establish that defendants violated the Eighth Amendment as a matter of law. Also, the court denies plaintiff's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Summary Judgment (Doc. 81) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Summary Judgment (Doc. 93) is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of November, 2019, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**